UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

WILLIAM JAMES ROBINSON, III,

        Plaintiff,

v.

JOSEPH STEPHAN,

        Defendant.
_____/

Case No. 1:18-1166

Honorable Janet T. Neff

**OPINION**

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against Defendant Joseph Stephan for failure to state a claim.

**Discussion**

    I.    <u>Factual Allegations</u>

        Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Michigan. The events about

which he complains, however, occurred at the Carson City Correctional Facility (DRF) in Carson City, Michigan. Plaintiff sues DRF Corrections Officer Joseph Stephan.

Plaintiff alleges that on July 27, 2018, Defendant Stephan closed the prisoner recreational room 30 minutes early. Plaintiff objected, asking Stephan why he closed the room early. Defendant Stephan responded "because I can." (Compl., ECF No. 1, PageID.3.)

Plaintiff requested a grievance form so he could file a grievance against Stephan for his "egregious abuse of authority." (*Id.*) Plaintiff claims Stephan responded by threatening to put Plaintiff in segregation and load him up with misconducts if Plaintiff filed a grievance. When Plaintiff reiterated his request for a grievance form, Defendant Stephan called other officers to the housing unit. Stephan filed a Class I misconduct report against Plaintiff alleging that Plaintiff threatened Stephan by saying "I'm surprised someone hasn't hurt you." (*Id.*) Plaintiff was cuffed and escorted to level IV. He asked that his property be packed up, but it was not. Plaintiff's property was stolen.

On August 2, 2018, Hearing Officer O'Brien conducted a hearing on the threatening-behavior misconduct report. Plaintiff told O'Brien that the misconduct was false and the report was retaliatory. O'Brien responded: "I don't care and if you don't ple[a]d guilty I'm going to give you the maximum penalty and make sure you rot in segregation." (*Id.*, PageID.4.)[1] Plaintiff pleaded guilty. (Misconduct Hr'g Report, ECF No. 1-1, PageID.9.)

Plaintiff claims that Defendant Stephan violated Plaintiff's First Amendment rights by writing a false misconduct report in retaliation for Plaintiff threatening to file a grievance. Plaintiff claims Defendant Stephan's actions also violated Plaintiff substantive due process rights

---

[1] The maximum penalties for a Class I misconduct are: punitive segregation for 10 days; 30 days of toplock; 30 days loss of privileges; and/or restitution. MDOC Policy Directive 03.03.105, Attach. D.

under the Fourteenth Amendment. Plaintiff seeks compensatory and punitive damages totaling $50,000.00.

II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed

3

by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. First Amendment Retaliation

Plaintiff claims that Defendant Stephan filed a false misconduct against Plaintiff in retaliation for his threatening to file a grievance against Stephan. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff's alleged protected conduct here was his threat to file a grievance against Defendant Stephan for Stephan's "egregious abuse of authority" in closing the recreation room a half-hour early. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Here, Petitioner does not allege

that he actually filed a grievance; he only threatened to do so. However, he did identify the nature of the grievance he intended to file.

Plaintiff's complaint would enjoy no less protection simply because he presented it orally. An inmate has a right to file grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). Moreover, even a threat to file a grievance may suffice. *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity).

Nonetheless, whether presented in writing, orally, or by threat, the right to file a grievance is protected only insofar as the grievance is not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002). As the Supreme Court held in *Lewis v. Casey*, "[d]epriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions."

The Sixth Circuit provided additional guidance regarding the meaning of grievance frivolity in *Maben*:

> Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*. *Ziegler v. State of Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-

5

invasive pat-down search" of her); *White-Bey v. Griggs*, 43 F. App'x 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, at *1-2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus–X v. Love*, 215 F.3d 1327, at *2-3 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]"). We have also described a non-frivolous grievance as a "legitimate" grievance. *Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009).

*Maben*, 887 F.3d at 264-65. In *Maben*, the court determined the grievance was not frivolous because the prisoner complained he had received an inadequate portion of food—"one of the major requirements of life . . . ." *Id.* at 265. Closing the recreation room a half-hour early on one day does not implicate a major requirement of life. The temporary closing of the recreation room is more in the nature of the *de minimis* impositions referenced by the *Maben* court. If, therefore, there is a *de minimis* exception to the protection afforded prisoner grievances, Plaintiff's grievance would fall within the exception. Moreover, Plaintiff's characterization of the closing of the recreation room a half-hour early as "an egregious abuse of authority" is plainly frivolous. Accordingly, it is likely that Plaintiff's allegation of protected conduct falls short.

If Plaintiff's threatened grievance were deemed non-frivolous and, therefore, protected conduct, Plaintiff has adequately alleged the second element: adverse action. The penalties that follow a determination of guilt for a threatening-behavior misconduct would likely deter a person from engaging in the protected conduct.

Plaintiff's allegations claiming that the consequences were motivated by a retaliatory intent, however, are not sufficient. Plaintiff alleges that Defendant Stephan expressed his intention to file false misconducts against Plaintiff if Plaintiff filed a grievance. Then, when Plaintiff persisted in his pursuit of the grievance (even if he did not actually file it), Plaintiff

6

contends that Defendant Stephan actually filed a false misconduct report. Plaintiff's allegations fail because he is precluded from claiming that the misconduct report was false.

The misconduct report reads:

> On 7-27-2018, at 1435, in C-unit, Prisoner Robinson #536456 (C-38) told me to get him a Grievance. I told Prisoner Robinson that he would have to wait. Prisoner Robinson was approx.: Three (3) Feet away from me, having direct eye contact, and said "I'm surprised someone hasn't hurt you."

(Misconduct Report, ECF No. 1-1, PageID.8.) The Hearing Officer found:

> Based on the uncontested facts, Prisoner Robinson said to Officer Stephan "I'm surprised someone hasn't hurt you." on 7-27-18 at 1435 hours. I find that his statement by its very nature expresses an intent to physically harm the officer. Prisoner Robinson admits his guilt. The Officer is clear and factual in his statement and is found to be credible. The charge is upheld.

(Misconduct Hr'g Report, ECF No. 1-1, PageID.9.)

In *Peterson v. Johnson*, 714 F.3d 905, 917 (6th Cir. 2013), the Sixth Circuit held as a matter of first impression that a factual finding made by a Michigan hearing officer in a major misconduct proceeding may have a preclusive effect in a subsequent challenge under 42 U.S.C. § 1983. Subsequently, in *Roberson v. Torres*, 770 F.3d 398 (6th Cir. 2014), the Sixth Circuit clarified that not every factual finding made in a misconduct proceeding is entitled to preclusive effect. Instead,

> the question of preclusion cannot be resolved categorically, as it turns on case-specific factual questions such as what issues were actually litigated and decided, and whether the party to be precluded had sufficient incentives to litigate those issues and a full and fair opportunity to do so—not just in theory, but in practice. It likewise turns on the court's "sense of justice and equity," . . . which may require a case-by-case analysis of surrounding circumstances.

*Roberson*, 770 F.3d at 404-05 (quoting *Blonder–Tongue Labs., v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971) (other citations omitted)). The Sixth Circuit further clarified the limits of the preclusion doctrine in *Maben*, 887 F.3d at 252, as follows:

> To determine whether we must give preclusive effect to "factfinding from Michigan prison hearings," we look to four requirements, all of which must be met: (1) the state agency "act[ed] in a 'judicial capacity'"; (2) the hearing officer "resolved a disputed issue of fact that was properly before it"; (3) the prisoner "had an adequate opportunity to litigate the factual dispute"; and, (4) if these other three requirements are met, we must "give the agency's finding of fact the same preclusive effect it would be given in state courts."

*Id.* at 259 (quoting *Peterson*, 714 F.3d 905, 911-13) (other internal citations and quotations omitted). The *Maben* court further reiterated the holding in *Roberson*: factual findings made by a hearing officer in Michigan's Class-I misconduct hearings are entitled to preclusive effect, but only if the hearing officer actually resolved a disputed issue of fact that was properly before him and the prisoner had an adequate opportunity to litigate the factual dispute.

There is no question that the state agency here acted in a judicial capacity. The duties of a hearing officer are set forth at Mich. Comp. Laws § 791.251 through § 791.255. Hearing officers are required to be attorneys and are under the direction and supervision of a special hearing division in the Michigan Department of Corrections. *See* Mich. Comp. Laws § 791.251(e)(6). Their adjudicatory functions are set out in the statute, and their decisions must be in writing and must include findings of facts and, where appropriate, the sanction imposed. *See* Mich. Comp. Laws § 791.252(k). There are provisions for rehearings, *see* Mich. Comp. Laws § 791.254, as well as for judicial review in the Michigan courts. *See* Mich. Comp. Laws § 791.255(2). Accordingly, the Sixth Circuit has held that Michigan hearing officers are professionals in the nature of administrative law judges. *See Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988).

Moreover, the facts Hearing Officer O'Brien was called upon to resolve here were in no way peripheral to the misconduct determination, they were at the very heart of it. Plaintiff had every opportunity to litigate whether he said it and whether it was threatening. The hearing

8

officer decided each of those issues. Plaintiff did not contest the allegations in the report; instead he chose to plead guilty—to concede the issues.

Although Plaintiff claims he was coerced into the plea by the promise of a lighter punishment, that is the nature of every plea. Generally speaking, it is not coercive to present a criminal defendant with a difficult choice between accepting a plea offer or facing the possibility of more significant consequences without the plea. In fact, this sort of choice is part and parcel of the plea process. As the Supreme Court has stated, "confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, [but] the imposition of these difficult choices [is] an inevitable'—and permissible— 'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.'" *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978) (quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 31 (1973)).

For the reasons stated above, the Hearing Officer's findings, (1) that Plaintiff said, "I'm surprised someone hasn't hurt you," and (2) that the statement expressed an intent to physically harm the officer, establish those facts preclusively. Therefore, to the extent Plaintiff's claims depends on Defendant Stephan's misconduct report being false, he has failed to state a claim.

It is not impossible for a misconduct report to be retaliatory and true. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court concluded that a plaintiff need not demonstrate that the misconduct proceeding terminated in his favor, in order to state a claim that he was issued a retaliatory misconduct. *Id.* at 441-42. Instead, the court reasoned, the issue of retaliatory motive on the causation prong was to be analyzed under the standard of *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274 (1977), where, if a plaintiff has shown that his protected conduct was

a motivating factor, the defendant may show that it would have taken the same action, regardless of the protected activity. *Thomas*, 481 F.3d at 441 (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) (en banc) (holding that the *Mt. Healthy* standard applies to retaliation claims)).

The *Thomas* court discussed two ways that a plaintiff could prove that the misconduct was retaliatory, even if the plaintiff were guilty of the misconduct. *Thomas*, 481 F.3d at 441-42. Specifically, the court mentioned that a prisoner might argue that other prisoners regularly violated the particular rule, but were never issued misconduct charges. Alternatively, he might argue that the particular defendant had never cited him for the conduct in the past, only issuing a misconduct once the prisoner had filed a grievance. Given the nature of Plaintiff's misconduct, neither circumstance is likely here.

The *Thomas* court concluded that the mere possibility of the two exceptional circumstances foreclosed dismissal under the Rule 12(b)(6) standard. *Thomas*, 481 F.3d at 442 ("A complaint cannot be dismissed unless 'the plaintiff can prove *no set of facts*' that would entitle him to relief.") The *Thomas* decision preceded *Twombly*, 550 U.S. at 544, and *Iqbal*, 556 U.S. at 662. The *Twombly/Iqbal* standard does not preclude this Court from dismissing under the 12(b)(6) standard where a prisoner's allegations present nothing more than a mere possibility of misconduct.

Plaintiff does not allege the presence of the exceptional circumstances that might permit a retaliation claim despite a guilty finding on the misconduct. Accordingly, he has failed to state a First Amendment retaliation claim.

    IV.    <u>Substantive Due Process</u>

Plaintiff also asserts a violation of his substantive due process rights under the Fourteenth Amendment, which prohibits states from "depriv[ing] any person of life, liberty, or

property, without due process of law[.]" U.S. Const. amend. XIV. "Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty." *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002). "Substantive due process serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the "decencies of civilized conduct."'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1998) (quoting *Rochin v. California*, 342 U.S. 165, 172-73 (1952))). The Sixth Circuit has held that framing an inmate by planting evidence may violate substantive due process where a defendant's conduct shocks the conscience and constitutes an "egregious abuse of governmental power." *Cale v. Johnson*, 861 F.2d 943, 950 (6th Cir. 1988), *overruled in other part by Thaddeus-X*, 175 F.3d at 388; *see also Davis v. Gallagher*, No. 1:16-cv-1405, 2016 WL 7403941, at *4 (W.D. Mich. Dec. 22, 2016); *Robinson v. Schertz*, No. 2:07-cv-78, 2007 WL 4454293 (W.D. Mich. Dec. 14, 2007).

"Where a particular [a]mendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that [a]mendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing such a claim." *Albright v. Oliver*, 510 U.S. 266, 266 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens, and the Eighth Amendment provides the standard for such searches of prisoners)). If such an amendment

exists, the substantive due process claim is properly dismissed. *Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013).

In this case, there is a specific constitutional amendment, the First Amendment, that provides an explicit textual source of constitutional protection for Plaintiff's retaliation claims. Thus, the standard applicable to that source, the First Amendment right to be free from retaliation, and not the more generalized notion of substantive due process should be applied. *Graham*, 490 U.S. at 395; *see also Bell v. Johnson*, 308 F.3d 594, 610 (6th Cir. 2002) (holding that, after *Graham*, the First Amendment standard is the sole source of substantive protection); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) (A "substantive due process right to free speech is duplicative of [a] First Amendment retaliation claim."). Consequently, Plaintiff's substantive due process claim will be dismissed.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.

Dated: December 10, 2018 /s/ Janet T. Neff
Janet T. Neff
United States District Judge